

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | |
|---|---|
| Tracy Adamczyk, | ) Docket No.: 2017-04-0074 |
|      Employee, | ) |
| v. | ) State File No.: 6517-2017 |
| | ) |
| Prospect, Inc., | ) Judge Robert Durham |
|      Employer, | ) |
| And | ) |
| | ) |
| Starnet Ins. Co., | ) |
|      Carrier. | ) |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This case came before the Court on November 8, 2017, on Ms. Adamczyk's Request for Expedited Hearing. The issues are whether she sustained a compensable January 23, 2017 injury, and if so, to which benefits she may be entitled. The Court holds Ms. Adamczyk is likely to prevail at a hearing on the merits that she sustained a mid-back injury that arose primarily out of and in the course and scope of her employment. Thus, Prospect must pay all reasonable and necessary medical expenses incurred with authorized physicians as a result of this injury. However, Ms. Adamczyk did not meet her burden with regard to temporary disability benefits.

### History of Claim

Ms. Adamczyk worked as a caregiver for Prospect for eleven years. Her job required her to provide companionship and assistance, such as housekeeping and running errands, to the disabled and elderly. Ms. Adamczyk worked part-time, entitling her to the minimum compensation rate of $133.20.

In 2008, Ms. Adamczyk suffered a compensable injury to her low back, which she settled in 2009 with lifetime medical benefits. She returned to work with Prospect under

1

physical restrictions, including a thirty-five-pound occasional lifting restriction. Since then, she received pain management through Dr. Jeffrey Hazlewood, whom she saw five to six times per year. The visits consistently noted pain levels as high as nine on a scale of ten if she were without medication. Her symptoms primarily consisted of low back pain that radiated into her legs, although she complained of thoracic pain once in 2013. Ms. Adamczyk also complained of other ailments, including fibromyalgia, for which she received treatment at Vanderbilt because Dr. Hazlewood would not treat these conditions under her settlement. In 2012, Ms. Adamczyk first sought social security disability benefits for her numerous health problems; however, social security denied her final appeal in 2016.

On the morning of January 23, 2017, Ms. Adamczyk went to the home of Mary Davis to provide assistance. Ms. Adamczyk testified Ms. Davis walked with great difficulty and spent most of her time in a living room chair. She described the home as a tiny apartment cluttered with furniture, rugs, shelves, boxes, books and "bric-a-brac" that Ms. Davis brought with her when she moved from a much larger home. Many of the items littered the living room and bedroom floors and most of the spare room was filled with boxes.

She stated she made Ms. Davis' bed but had difficulty doing so given the items stacked around it. While cleaning the bathtub she accidentally turned on the shower, soaking a dog bed and other items. Ms. Adamczyk stated she attempted to vacuum, but Ms. Davis objected to the noise, Ms. Adamczyk then worked on moving boxes filled with items such as books and other unboxed items on the living room floor because Ms. Davis planned to have someone over to rearrange her furniture. While maneuvering through the rooms, she tripped over a rug and felt a "pull" with immediate pain in her mid back. She rested for the remainder of her shift, leaving at 12:00 noon.

Ms. Davis' written declaration provided a different account. She stated she only asked Ms. Adamczyk to move two boxes containing yarn and jewelry, neither of which was heavy. She denied that Ms. Adamczyk tripped over anything or that she complained of an injury or back pain. Ms. Davis claimed Ms. Adamczyk refused to vacuum and left her bathroom floor, along with the dog bed and personal belongings, soaking wet. Ms. Davis immediately called Ms. Adamczyk's supervisor, Gina Robinson, to complain once Ms. Adamczyk left her apartment.

Ms. Robinson also provided a written declaration. She stated Ms. Adamczyk texted her twice while at Ms. Davis' home but did not report an accident or injury. Ms. Adamczyk texted her again after she left Ms. Davis' home but did not mention an injury.[1] Ms. Adamczyk texted Ms. Robinson at 2:10 p.m. to let her know she had dropped off paperwork at the office. Ms. Robinson replied and asked her to come in the next morning

---

[1] By this point, Ms. Robinson had already talked to Ms. Davis about her complaints.

to discuss her schedule. Without mentioning a work accident or back pain, Ms. Adamczyk texted back that she could not make it in at all the next day. The next day at 4:44 p.m., Ms. Robinson sent another text instructing Ms. Adamczyk to be at the office the following morning. Ms. Adamczyk replied at 5:10, stating she had gone to the doctor with back pain and may have hurt her back at Ms. Davis' home. Ms. Robinson told her to come in the next day to complete the necessary paperwork.

In her declaration, Ms. Robinson stated that Ms. Adamczyk told her she felt she injured her back while moving heavy boxes but did not mention tripping. Ms. Robinson investigated the claim by going to Ms. Davis' home and lifting the two boxes identified by Ms. Davis as the ones Ms. Adamczyk carried. The boxes contained yarn and pieces of jewelry. Ms. Robinson asserted they both weighed less than five pounds.

Much of the testimony at the hearing concerned Ms. Adamczyk's actions before providing notice to Prospect and her subsequent descriptions of the alleged incident. Ms. Adamczyk testified she was in intense pain at 2:00 p.m. when she met a friend, Keith Fry, for lunch. Mr. Fry testified he had to help Ms. Adamczyk from her car into his truck, after which they then delivered her paperwork to Prospect and ate lunch. Following lunch, Ms. Adamczyk returned home. She testified she did not mention her back pain to Ms. Robinson on the 23rd because she thought her back might improve.

On the 24th, Ms. Adamczyk asked Mr. Fry to take her to the doctor because she remained in severe pain. They went to the Cherry Valley walk-in clinic, which recorded that the visit occurred at 4:09 p.m. and that Ms. Adamczyk complained of upper respiratory infection symptoms and low back pain for the past two days. The record further noted Dr. Hazlewood was treating her for low back pain. The rest of the report dealt primarily with the upper respiratory infection.

Ms. Adamczyk completed a Safety Incident Report at Prospect the next day, which stated that she helped move items so Ms. Davis could rearrange furniture and felt "something pull" in her back. She described difficulty in maneuvering through the items on the floor, particularly around the bed, and she concluded the pain was due to overuse and "possibly tripping over stuff all over the floor."

Prospect provided a panel to Ms. Adamczyk, and she chose Dr. Wayne Wells for authorized treatment. She went to his clinic that day and reported that she strained her back, causing mid-back pain, while moving boxes two days previously. The report noted Ms. Adamczyk's history of low back pain but specifically stated the mid-back pain "arises primarily out of and in the course of employment."[2] Dr. Wells diagnosed Ms. Adamczyk with thoracic back strain, prescribed a Medrol dose pack, and placed her

---

[2] The Court notes that this record was not provided to the Bureau or the Court until the day of the expedited hearing.

under restrictions.

Ms. Adamczyk returned to Dr. Wells on January 31 and stated her back was somewhat better. While Dr. Wells' handwriting is difficult to decipher, he stated "back to usual chronic back pain but c/o pain higher—immediate, sharp, electrical." He noted she described lifting "a heavy box last Monday." He diagnosed her with "thoracic back pain/spine pain" and referred her to an orthopedist. Dr. Wells also stated Ms. Adamczyk should remain out of work until an orthopedist evaluated her.

That same day, Ms. Adamczyk provided a recorded statement to claims adjuster, Jennifer Hudson. She told Ms. Hudson she injured her back while moving boxes and piles of books so she could vacuum the living room floor. She described her injury as being in her mid back to her low back, and she suffered from new pain that was "up higher" than the chronic low back pain for which she saw Dr. Hazlewood.

On February 2, Ms. Hudson sent a Notice of Denial to Ms. Adamczyk and notified Dr. Wells' office that she would no longer authorize treatment. Ms. Hudson reasoned that no specific incident or accident occurred and Ms. Adamczyk did not report any injury or pain but told her employer her back was hurting following a day of work. Ms. Adamczyk testified that no one paid Dr. Wells' bills and he is currently seeking payment from her.

Ms. Adamczyk did not seek treatment from another provider or return to work with Prospect. She testified that it was her understanding that another doctor would not treat her for a workers' compensation injury, which she adamantly maintained she sustained. Prospect would not allow her to return to work without a doctor's release but would not authorize her to return to Dr. Wells.

On May 25, Ms. Wells saw Dr. Hazlewood. Dr. Hazlewood noted that Ms. Wells stated she suffered a "second injury" in January when she tripped over a rug while carrying boxes and "felt a pop with acute pain in her low back." She described the pain as being in her "upper lumbar spine region which was higher up than the pain [he] had treated for years." Although Dr. Hazlewood did not observe any objective signs of radiculopathy from the "new injury," he stated that normally a five-month-old injury with no improvement would require an MRI. However, given that he was not treating her for the "new injury," all he could do for her was provide medication for the "old injury" since it was unchanged by the "new injury." He concluded by stating that he did not see any objective anatomical change on physical exam for her "new injury."

On October 2, Prospect's counsel wrote a letter to Dr. Hazlewood summarizing Ms. Adamczyk's history with Dr. Hazlewood, especially the visits in 2016. It then stated Ms. Adamczyk originally said she injured her back "lifting heavy boxes of books" with the phrase in quotes and suggested she may have been exceeding her permanent

4

restrictions. The letter indicated an investigation revealed that the "only boxes present at the client's house weighed less than five pounds." It also asserted that Ms. Adamczyk never told Prospect or Dr. Wells that she tripped or felt a "pop" in her back. Finally, it said that Ms. Adamczyk did not report an injury until after she was told to come in to discuss Ms. Davis' complaints.

Prospect's counsel concluded the letter by asking Dr. Hazlewood the following question:

> Based upon your long standing treatment of Ms. Adamczyk, and considering this additional information, can you state, to a reasonable degree of medical certainty that the moving of a box that weighed 5 lbs or less contributed more than 50% in causing or exacerbating her pre-existing back condition(s), considering all causes?

Dr. Hazlewood responded by checking "No."

Finally, on cross-examination Prospect's counsel, Mary Dee Allen, asked Ms. Adamczyk about her hobbies and interests. When Ms. Allen specifically confronted Ms. Adamczyk about her history of arm-wrestling, she admitted she has been nationally ranked in women's arm-wrestling for the last several years. Ms. Adamczyk stated she had arm-wrestled in recent years but had not actually competed in any events since the incident in January. She stated that while documentation indicated she won the event at the Wilson County Fair this year, it was only because there were no other contestants in her weight class. Mr. Fry corroborated this testimony.

## Findings of Fact and Conclusions of Law

Ms. Adamczyk has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she must only come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In order to prevail on causation, Ms. Adamczyk must establish she suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2017). Ms. Adamczyk must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely

5

than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor.

Dr. Wells, the only authorized physician who saw Ms. Adamczyk, explicitly stated that Ms. Adamczyk's condition "arises primarily out of and in the course of employment." As the authorized physician, Dr. Wells' causation opinion is entitled to a presumption of correctness that can only be rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E). Prospect attempted to rebut the presumption on two fronts: (1) through the letter to Dr. Hazlewood; and (2) through challenging Ms. Adamczyk's version of the events surrounding her alleged accident.

As Dr. Hazlewood stated in his May 25 record, Prospect or its carrier never authorized him to treat Ms. Adamczyk for her "new" injury and therefore he did not do so. All he could do was to continue prescribing medication for her "old injury" under her previous workers' compensation claim, which he carefully noted was unchanged by her "new injury." He did, however, state that he would normally order an MRI in response to her continued complaints even though he did not observe any objective anatomical changes caused by the "new injury."

On October 4, Dr. Hazlewood checked "no" to what amounts to a two- and one-half-page hypothetical question regarding causation. However, the facts contained in the hypothetical, as well as the concluding question itself, contain many deficiencies that make the opinion of little value.

First, many of the facts the question asks Dr. Hazlewood to assume are highly contested by Ms. Adamczyk or are not part of the evidence at all. For example, Ms. Adamczyk never claimed that she lifted "heavy boxes filled with books." The phrase presents a different connotation than any history given by Ms. Adamczyk. Ms. Adamczyk disputed the assertion that the only boxes she lifted weighed less than five pounds. No evidence suggests that anyone told Ms. Adamczyk about Ms. Davis' complaints before she reported a back injury. Ms. Adamczyk testified she did not know about the complaint until she visited the office on the 25th, after reporting the injury the day before. The letter stated Ms. Adamczyk told Dr. Wells that her "pain had returned to baseline." However, that quote actually seems to be speaking about her pre-existing low-back pain, and not the pain "higher up." The letter also alleged that Ms. Adamczyk never told Prospect that she tripped on a rug or felt a pop in her back as she related to Dr. Hazlewood; however, the Prospect Employee Safety Incident Report that Ms. Adamczyk completed on January 25th stated that she "possibly" tripped and that she felt a "pull" in her back.

Second, even if the facts supporting the hypothetical were accurate, the actual question asked of Dr. Hazlewood is of little use in eliciting his opinion regarding this

6

injury. Dr. Hazlewood was not asked whether or not in his opinion Ms. Adamczyk sustained a compensable injury on January 25th; instead, he was asked whether or not he can *state* to a reasonable degree of medical certainty that she did. A reasonable interpretation of his one-word answer is that Dr. Hazlewood simply cannot state one way or the other; not that he necessarily believes she didn't. However, even if the answer is sufficient to provide a causation opinion, the question asked was whether the incident "cause[d] or exacerbate[d] her *pre-existing back condition.*" It does not ask whether he believed the incident caused a new injury, as Ms. Adamzcyk has alleged from the beginning. Thus, the Court finds that Dr. Hazlewood's response to Prospect's letter should be accorded little weight on the causation issue.

Prospect also exerted significant effort to impeach Ms. Adamczyk's account of the January 25 incident and thus erode Dr. Wells' causation opinion. However, despite Prospect's argument, the Court does not find Ms. Adamczyk's descriptions, as transcribed by various parties, significantly inconsistent with each other. While some are more detailed than others, they all essentially correspond with Ms. Adamczyk's testimony that she was moving boxes and other items from Ms. Davis' living room floor to other rooms when she tripped over a rug and felt a pop and immediate pain in her upper lumbar region. The Court is also not convinced by Ms. Davis' written statement, not subject to cross-examination, that Ms. Adamczyk only lifted two boxes weighing less than five pounds each. According to Ms. Adamczyk's uncontroverted testimony, Ms. Davis had great difficulty walking and spent most of her time in a chair in a corner of the living room. She would not have been able to see much of what Ms. Adamczyk actually did, particularly in the other rooms.

The Court also differs with Prospect regarding the significance of Ms. Adamczyk's failure to immediately notify her supervisor of her injury. While it would certainly have been the better practice to provide immediate notice, Ms. Adamczyk testified she hoped her back would get better. The Court does not find that unreasonable.

Finally, while Ms. Adamczyk's arm-wrestling history is interesting and may be a factor to address with her physician, the Court does not find it significant with regard to causation or disability from a January 23 work-related back incident, particularly since Prospect introduced no evidence that Ms. Adamczyk actually wrestled this year.

Given all of the above findings, the Court finds that Prospect failed to produce sufficient evidence to rebut Dr. Wells' opinion that Ms. Adamczyk's mid-back pain primarily arose out of and in the course and scope of her employment with Prospect. Thus, the Court holds that, at a hearing on the merits, Ms. Adamczyk will likely prevail in establishing entitlement to workers' compensation benefits for her January 23, 2017 injury.

With regard to medical benefits, the Court holds that Prospect is obligated to

provide reasonable and necessary medical treatment for Ms. Adamczyk's work-related injury. Tenn. Code Ann. § 50-6-204(a)(1)(A). Given the length of time since Dr. Wells last saw Ms. Adamczyk, Prospect shall pay for another visit to him and shall also pay for recommended treatment, including but not limited to an orthopedic referral.

As to temporary disability benefits, the issue is complicated by Prospect's premature denial of Ms. Adamczyk's claim. Temporary total disability benefits are owed when the employee can prove a compensable injury rendered her totally disabled from working for a specific duration. *Shepherd v. Haren Constr. Co., Inc., et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Here, Ms. Adamczyk sufficiently established the likelihood of proving that her work injury resulted in total disability through the fact that Dr. Wells took her off work until an orthopedist saw her. Of course, Ms. Adamczyk never saw an orthopedist because Prospect denied her claim and refused to authorize another visit with Dr. Wells. However, the burden remains Ms. Adamczyk's, and the Court cannot find at this point that she is likely to prevail with regard to proving duration. Ms. Adamczyk simply did not introduce enough medical evidence for the Court to address the issue at this time. However, she is not precluded from requesting temporary disability benefits at a subsequent hearing.

Finally, the Court is troubled by the fact that a crucial piece of evidence to this claim—Dr. Wells' initial note in which he unequivocally stated Ms. Adamczyk's injury primarily arose out of and in the course of her employment—was not presented to the Bureau or the Court until the day of the hearing. Rule 0800-02-21-.11(02) of the Mediation and Hearing Procedures require the parties to "cooperate with the mediator and *provide any information necessary for the resolution of the dispute.*" (Emphasis added.) The only documents provided from Dr. Wells' office were his restrictions and out-of-work slips.[3]

When asked at the hearing why Dr. Wells' complete notes were not made part of the record, Ms. Adamczyk stated she assumed Prospect had already provided them. Ms. Allen stated she did not know. The Court finds it difficult to believe that during mediation, Ms. Hudson and/or Ms. Allen had Dr. Wells' notes concerning Ms. Adamczyk's work status but did not have the actual record of her visit, or that they did not recognize the record's importance regarding the claim's merits. The most logical conclusion is that the omission was intentional. Therefore, the Court refers this matter to the Bureau's Compliance unit for determination of any penalties it may deem appropriate.

IT IS, THEREFORE, ORDERED that:

---

[3] The Court also notes that as part of its exhibits, Prospect only included Dr. Wells' note from January 31 and not the January 25 note that addressed causation. While it may be argued that Prospect had no obligation to produce records that might assist Ms. Adamczyk, it still does not reflect favorably on the record's omission to the mediator.

1. Prospect shall pay all unpaid medical expenses related to Dr. Wells' past treatment of Ms. Adamczyk. Prospect shall further authorize Dr. Wells to provide further reasonable and necessary treatment for Ms. Adamczyk's work-related injury, including but not limited to an orthopedic referral.

2. Ms. Adamczyk's request for temporary disability is denied at this time, but this holding does not preclude her from requesting temporary disability benefits at a subsequent hearing.

3. The Court refers this matter the Bureau's Compliance unit for a determination regarding penalties.

4. This matter is set for a Scheduling Hearing on January 3, 2018, at 9:00 a.m. C.S.T. The parties or their counsel must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing. Failure to call may result in a determination of the issues without your participation.

5. Unless appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED THIS THE 20th DAY OF NOVEMBER, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

9

# APPENDIX

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Prospect's additional defenses
4. Request for Expedited Hearing
5. Order of Continuance
6. Order Setting Expedited Hearing
7. Prospect's Pre-Trial Witness List
8. Prospect's Amended Pre-Trial Exhibit List
9. Order Denying Motion for Contempt

Exhibits

1. Dr. Jeffrey Hazlewood's medical records
2. Letter from Prospect's counsel and Dr. Hazlewood's response
3. Vanderbilt medical records
4. Ms. Adamczyk's recorded statement
5. Records from Ms. Adamczyk's 2008 workers comp injury
6. First Report of Injury, wage statement, letters regarding administrative leave
7. Notice of Controversy
8. Record from The Doctor's Office dated 1/31/2017
9. Declaration of Gina Robinson
10. Declaration of Marcia Davis
11. Declaration of Jennifer Hudson
12. Employee Safety Incident Report
13. Record from Cherry Valley Walk-In Clinic
14. Ms. Adamczyk's affidavit
15. First Report of Injury prepared by Ms. Pena

16. Notice of Denial
17. Additional records from the Doctor's Office
18. Performance Improvement Plan
19. Map for I.D. purposes
20. First Report of Injury
21. Letter from Dr. Hazlewood dated November 1 for I.D. purposes only

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 20th day of November, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Tracy Adamczyk | X | | | P.O. Box 105 Carthage, TN 37030 |
| Mary Dee Allen | | | X | mallen@wimberlylawson.com |
| Compliance Unit | | | X | WCCompliance.Program@tn.gov |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11